# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Z-MEDICA CORPORATION, | : | |
| | : | CIVIL NO. |
| Plaintiffs, | : | |
| V. | : | |
| | : | |
| AMTRANS HEALTH, LLC, SAGAR | : | |
| FOSSIL FUEL TECHNOLOGIES PVT. | : | |
| LTD, SHANEEL K. JAIN, and JAMES J. | : | JURY TRIAL DEMANDED |
| ROBERTS, | : | |
| | : | |
| Defendants. | : | |
| | : | May 2, 2008 |

## COMPLAINT

Z-Medica Corporation ("Z-Medica") alleges as follows:

### I. PARTIES

1.      Plaintiff Z-Medica Corporation is a corporation duly organized and existing under the laws of Connecticut with its principal place of business in Wallingford, Connecticut. Z-Medica manufactures life-saving medical products, including QuikClot® brand hemostatic agents.  QuikClot® is a breakthrough medical product that saves lives by rapidly stopping severe bleeding.

2.      Upon information and belief, Defendant AmTrans Health, LLC ("AmTrans") is a company duly organized and existing under the laws of Rhode Island with its principal place of business in Wickford, Rhode Island.

3.      Upon information and belief, Defendant Sagar Fossil Fuel Technologies Pvt. Ltd ("Sagar") is a company duly organized and existing under the laws of India with its principal place of business in New Delhi, India.

4.     Upon information and belief, Shaneel K. Jain ("Jain") is a citizen of India with a residence in Rhode Island.  Upon information and belief, Mr. Jain is the owner and Chief Executive Officer of Sagar.

5.     Upon information and belief, James J. Roberts ("Roberts") is a United States citizen and domiciled in Rhode Island.  Upon information and belief, Mr. Roberts is the owner and Chief Executive Officer of AmTrans.

## II. JURISDICTION AND VENUE

6.     Venue is appropriate pursuant to 28 U.S.C. § 1391.

7.     This Court has subject matter jurisdiction over this action based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a) (diversity).  The plaintiff is a corporation incorporated under the laws of Connecticut with its principal place of business in Connecticut.  Upon information and belief, the defendant AmTrans is a corporation incorporated under the laws of Rhode Island with its principal place of business in Rhode Island; the defendant Sagar is a corporation incorporated in India with its principal place of business in India; the defendant Shaneel Jain is a citizen of India; the defendant James Robert is a citizen of Rhode Island.   The amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. § 1332.

8.     This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question); 15 U.S.C. § 1121 (Lanham Act) and 15 U.S.C. §1114 (trademark violations).

9.     This Court has personal jurisdiction over Sagar, AmTrans, Mr. Jain and Mr. Roberts (collectively "Defendants") based on each Defendant's minimum contacts with Connecticut.  Specifically, as further set forth below, representatives of Sagar, AmTrans, as well

as Mr. Jain and Mr. Roberts, traveled to Connecticut multiple times to negotiate the business transactions between the parties at issue in this action.  Representatives of AmTrans, including Mr. Roberts, traveled to Z-Medica's Connecticut headquarters multiple times to pick up QuikClot® units at issue in this case.  Furthermore, the parties formed all contracts at issue in this case in Connecticut.

### III. FACTS

### Allegations Common to All Causes of Action

#### Background

10.     This action arises out of Z-Medica's efforts to sell its life-saving QuikClot® products in India.

11.     In January 2002, QuikClot® inventor Francis X. Hursey and Bart Gullong formed Z-Medica to market QuikClot® brand hemostatic agent ("QuikClot®").  QuikClot® is a breakthrough product that saves lives by rapidly stopping severe bleeding.

12.     In 2003, in an effort to market and sell QuikClot® to the military and defense markets in India, Z-Medica forged a relationship with Mr. Jain and his company, Sagar Fossil Fuel Technologies Pvt. Ltd.

13.     Upon information and belief, Mr. Jain and Sagar at some point entered into a relationship with Mr. Roberts and Mr. Roberts's company, AmTrans Health LLC, related to, *inter alia*, the exportation of QuikClot® from the United States to India.

#### 2005 Agreement

14.     In May 2005, Z-Medica formalized its relationship with Mr. Jain and Sagar through an agreement ("2005 Agreement").  The 2005 Agreement authorized Mr. Jain and Sagar to be the sole representatives of QuikClot® for the Indian military and defense markets.

The term of the 2005 Agreement was through the end of calendar year 2005. The 2005 Agreement stated that Z-Medica would be available to discuss a renewal of the 2005 Agreement annually.

15.     In negotiating the 2005 Agreement, Mr. Jain agreed that Sagar would meet required minimum sales of QuikClot®. Mr. Jain also agreed to promote, market and sell QuikClot® to the military and defense markets in India.

16.     During 2005, however, Mr. Jain and Sagar failed to meet the minimum sales required by the 2005 Agreement.

17.     On December 28, 2005, representatives of Z-Medica met with Mr. Jain and Mr. Roberts. The meeting took place at Z-Medica's headquarters in Wallingford, Connecticut. The purpose of the meeting was to discuss Mr. Jain's 2005 sales of QuikClot®.

18.     At the December 28, 2005 meeting, Mr. Jain agreed that he and Sagar had not met the minimum sales of QuikClot® required by the 2005 Agreement.

19.     At the December 28, 2005 meeting, Z-Medica informed Mr. Jain that as of January 2006, Z-Medica would not reappoint Mr. Jain or Sagar as Z-Medica's exclusive distributor of QuikClot® to the military and defense markets in India.

20.     From January 2006 on, Z-Medica repeatedly informed Mr. Jain and Mr. Roberts that because Mr. Jain and Sagar failed to meet their 2005 required minimum sales, Mr. Jain and Sagar were no longer Z-Medica's exclusive agents for the sale of QuikClot® to India's military and defense markets.

21.     In good faith, Z-Medica continued to allow Mr. Jain and Sagar to sell QuikClot® within India to the military and defense markets on a *non-exclusive basis*.

**Mr. Jain's 2006 Threats**

22.    On July 7, 2006, representatives of Z-Medica again met with Mr. Roberts and Mr. Jain at Z-Medica's Wallingford, Connecticut headquarters.  The parties again discussed Sagar's loss of rights as an exclusive distributor of QuikClot® to the Indian military and defense markets.

23.    At the July 7, 2006 meeting, Mr. Jain threatened that if Z-Medica did not appoint Mr. Jain and Sagar Z-Medica's sole representative in India, Mr. Jain would make sure that Z-Medica would never do business in India.

**March/April 2007 10,000 Unit Order of QuikClot®**

24.    On March 30, 2007, at Mr. Robert's request, Z-Medica representatives met with Mr. Roberts and his associate at Z-Medica's headquarters in Wallingford, Connecticut.  Mr. Roberts expressed frustration with Mr. Jain and in effect asked for a final chance to show Z-Medica that AmTrans and Sagar could sell QuikClot® in India.

25.    The March 30, 2007 meeting resulted in an agreement for Z-Medica to sell AmTrans 10,000 units of QuikClot®.  Mr. Roberts agreed on behalf of AmTrans to pay Z-Medica $105,000.00 in full within 90 days of Mr. Robert's picking the QuikClot® up from Z-Medica's headquarters.

26.    Upon information and belief, Roberts induced Z-Medica to enter into the QuikClot® 10,000 unit contract with false statements.  Specifically, Roberts represented that he would pay within 90 days and that he and Mr. Jain would put forth their best good faith efforts to sell the QuikClot® units to the Indian military and defense market.

27.    On April 9, 2007, AmTrans sent Z-Medica a Purchase Order for 10,000 units of QuikClot® ("Purchase Order").

28.     On April 10, 2007, Roberts traveled to Z-Medica's Wallingford, Connecticut headquarters to pick up the 10,000 units of QuikClot®. Because the QuikClot® packets Mr. Roberts picked up had a 5 year expiration date, the products exceeded the 3.5 year expiration date outlined in the Purchase Order. The 5 year expiration date of each QuikClot® packet was clearly marked on the outside of each QuikClot® packet.

29.     Upon information and belief, in or before May 2007, Mr. Roberts discovered that the 10,000 units of QuikClot® had a 5 year expiration date. No party ever directly informed Z-Medica that the 5 year expiration date was a material problem for AmTrans, Sagar, Mr. Jain or Mr. Roberts. No party ever directly asked Z-Medica to provide replacement QuikClot® units with a different expiration date.

30.     On or around July 11, 2007, approximately 90 days after Mr. Roberts took the 10,000 units of QuikClot® from Z-Medica's headquarters, Z-Medica requested payment in full. Mr. Roberts did not pay Z-Medica.

31.     Again on August 24, 2007, with AmTrans now six weeks late on its payment for the 10,000 units, Z-Medica sent an e-mail to Mr. Roberts offering to take all of the 10,000 units of QuikClot® back for a restocking fee. AmTrans and Sagar flatly refused the offer.

32.     Z-Medica has repeatedly requested payment by e-mail and certified letters. To date, AmTrans has not paid Z-Medica a cent for the 10,000 units of QuikClot®.

**Termination of Relationship and Defendants' Unauthorized Representations**

33.     On December 18, 2007, Z-Medica sent a letter to Mr. Jain, Sagar, Mr. Roberts, and Am Trans that they were not authorized to represent Z-Medica or QuikClot® in any manner whatsoever, Z-Medica informed Mr. Jain, Mr. Roberts, Sagar and AmTrans that they were not authorized to sell or represent QuikClot® or Z-Medica in any capacity.

34.     Upon information and belief, Mr. Roberts, Mr. Jain, Sagar and AmTrans continue to misrepresent that they are authorized to sell and distribute QuikClot®.

35.     To this date, Sagar makes the false and misleading claims on Sagar's website that Sagar "handles the entire Indian business scene for Z-Medica, USA for their latest and most innovative invention of the century 'QuikClot' . . ."

36.     To this date, Sagar continues to post on its website a letter entitled "Official QuikClot® Hemostat Authorization." As set forth in Z-Medica's December 17, 2007 letter, there is no agreement by Z-Medica allowing Mr. Jain or Sagar to represent Z-Medica or QuikClot®.

**Allegations Common to Lanham Act Claims**

37.     Z-Medica is the owner of the registered trademark QuikClot®.

38.     Since Z-Medica's founding, Z-Medica has used its QuikClot® registered trademark to identify its wares, including but not limited to, QuikClot® Response™, QuikClot® ACS™, and QuikClot® ACS+™, and The Original QuikClot®.

39.     Z-Medica has expended substantial sums of money on promotion and advertising to establish and maintain the public's awareness and recognition of its QuikClot® trademark and to develop an association in the public's mind between the mark and Z-Medica's QuikClot® products and services.

40.     Despite Z-Medica's repeated requests, Sagar and Mr. Jain continue to use the QuikClot® trademark and Z-Medica name without authorization. Sagar and Mr. Jain have placed the QuikClot® name and logo prominently on multiple pages of Sagar and Mr. Jain's website. Furthermore, Sagar's website lists **quikclot**@yahoo.co.in as a contact e-mail address for Sagar.

41.     On December 18, 2007, Z-Medica sent a letter by carrier, facsimile, and e-mail to Sagar, Mr. Jain, and Mr. Roberts demanding that:

      1)     Sagar not deal in goods bearing the QuikClot® trademark;

      2)     Sagar not represent that it or any of its officers, employees or agents are associated, in any way, with Z-Media;

      3)     Sagar remove all reference to Z-Medica and QuikClot® from its websites, brochures, promotional materials and the like; and

      4)     Sagar redirect all existing customers who have placed orders for or are contemplating purchase of QuikClot® brand products and enquiries about QuikClot® brand products and Z-Medica to Z-Medica.

43.     To date, upon information and belief, Defendants have failed to comply with Z-Medica's December 17, 2008 directives.

### III. CLAIMS FOR RELIEF

### COUNT ONE

**Breach of Contract: Services**
**Breach of Covenant of Good Faith and Fair Dealing**
*As Against Mr. Jain and Sagar*

42.     Z-Medica incorporates by reference paragraphs 1 through 43 above as if fully set forth herein.

43.     As described above, Z-Medica entered into a contract with Sagar and Mr. Jain to promote, market and sell QuikClot® to the military and defense markets in India.

44.     Implicit in such contract was a covenant of good faith and fair dealing, including the duty to insure that neither party will injure the right of the other to receive the benefits of the agreement.

8

45.     Z-Medica performed all of its obligations under said contract.

46.     Said implied covenant of good faith and fair dealing restrained Mr. Jain and Sagar from, *inter alia*, disparaging Z-Medica's reputation in India and from hindering QuikClot®'s sales in India and elsewhere.

47.     Upon information and belief, Mr. Jain has threatened Indian officials purportedly on behalf of Z-Medica and Sagar.

48.     Upon information and belief, Mr. Jain and Sagar have hindered the sales of QuikClot® in India.

49.     Mr. Jain and Sagar failed to assist in good faith with the selling, training, or marketing of QuikClot® to the Indian military and defense markets.

50.     Z-Medica was informed on multiple occasions that Mr. Jain and Sagar were incapable of meeting the needs of potential customers in India.

51.     In doing so, Mr. Jain and Sagar have acted in bad faith and breached the implied covenant of good faith and fair dealing.

52.     Z-Medica has suffered damages as a result of said breach.

## COUNT TWO

**Breach of Contract:  Services**
**Breach of Covenant of Good Faith and Fair Dealing**
*As Against Mr. Roberts and AmTrans*

53.     Z-Medica incorporates by reference paragraphs 1 through 52 above as if fully set forth herein.

54.     As described above, in March/April 2007, Z-Medica entered into a contract with Mr. Roberts and AmTrans for the sale of 10,000 units of QuikClot® to the military and defense markets in India.

55.     Implicit in such contract was a covenant of good faith and fair dealing, including the duty to insure that neither party will injure the right of the other to receive the benefits of the agreement.

56.     Z-Medica performed all of its obligations under said contract.

57.     Said implied covenant of good faith and fair dealing restrained Mr. Roberts and AmTrans from, *inter alia*, disparaging Z-Medica's reputation and from hindering QuikClot®'s sales in India.

58.     Upon information and belief, Mr. Roberts and AmTrans have hindered the sales of QuikClot® in India and in the Indian subcontinent.

59.     Upon information and belief, Mr. Roberts and AmTrans entered into the March/April 2007 contract to buy 10,000 units of QuikClot® with no intention to pay for such units.

60.     Mr. Roberts and AmTrans failed to assist in good faith with the selling, training, or marketing of QuikClot® to the Indian military and defense markets.

61.     In doing so, Mr. Roberts and AmTrans have acted in bad faith and breached the implied covenant of good faith and fair dealing.

62.     Z-Medica has suffered damages as a result of said breach.

## COUNT FOUR

**Breach of Contract: Sale of Goods**
*As Against Mr. Roberts and AmTrans*

63.     Z-Medica incorporates by reference paragraphs 1 through 62 above as if fully set forth herein.

64.     As described above, Z-Medica entered into a contract in March/April 2007 with Mr. Roberts and AmTrans for the sale of 10,000 units of QuikClot® in exchange for a payment of $105,000.00 within 90 days of Mr. Robert's receipt of the QuikClot®.

65.     Z-Medica performed its obligations under said contract.

66.     Mr. Roberts and AmTrans accepted the 10,000 units of QuikClot® with the 5 year expiration date.

67.     Mr. Roberts and AmTrans have breached the contract by, *inter alia*, failing to pay for the 10,000 units of QuikClot®, failing to return the 10,000 units of QuikClot®, failing to mitigate damages if any, and failing to negotiate in good faith for payment or the return of QuikClot® on mutually agreeable terms.

68.     Z-Medica has suffered damages as a result of said breach.

## COUNT FIVE

### Connecticut Unfair Trade Practices Act ("CUTPA")
*As Against Mr. Jain, Sagar, Mr. Roberts, AmTrans*

69.     Z-Medica incorporates by reference paragraphs 1 through 68 above as if fully set forth herein.

70.     By taking the actions described above, Mr. Jain, Sagar, Mr. Roberts and AmTrans have engaged in unfair methods of competition and/or unfair or deceptive acts or practices in the conduct of trade or commerce.

71.     At all times relevant hereto, the conduct of all Defendants offended public policy; was immoral, oppressive, unethical and unscrupulous; and caused substantial injury to consumers, competitors and other businessmen; thereby violating the Connecticut Unfair Trade Practices Act ("CUTPA") Conn. Gen. Stat. § 42-110a, et seq.

72.     As a result of said conduct, Z-Medica has suffered and continues to suffer ascertainable actual damages.

## COUNT SIX

### Tortious Interference With Prospective Business Expectations
*As Against Mr. Jain, Sagar, Mr. Roberts, AmTrans*

73.     Z-Medica incorporates by reference paragraphs 1 through 72 above as if fully set forth herein.

74.     Z-Medica specifically incorporates by reference paragraphs 80 through 115 above as if fully set forth herein.

75.     An expected business relationship existed between Z-Medica and its customers, including but not limited to Assam Rifles.  Z-Medica had cause to anticipate receiving business from these customers, including Assam Rifles in the future.

76.     Defendants were aware of these expected business relationships.

77.     Upon information and belief, by making disparaging statements about Z-Medica and failing to put forth best efforts in the representation and sale of QuikClot® to Assam Rifles, Defendants Sagar and AmTrans intentionally interfered with the business relationship existing between Assam Rifles and Z-Medica.

78.     This interference has been conducted through Defendants' fraud and misrepresentation as set forth in paragraphs 80 through 115 below.

79.     As a result of this interference, Z-Medica has suffered actual damages.

## COUNT SEVEN

### Fraud
*As Against Mr. Jain and Sagar*

80.     Z-Medica incorporates by reference paragraphs 1 through 79 above as if fully set forth herein.

81.     As described above, Mr. Jain and Sagar agreed to work to promote, market and sell QuikClot® to the Indian military and defense markets.

82.     As described above, Defendants Mr. Jain and Sagar represented that they had the capacity and expertise to promote, market and sell QuikClot® to the Indian military and defense market.

83.     Mr. Jain stated on multiple occasions that he had sold thousands of units of QuikClot® to Indian purchasers.

False Registration Requirements

84.     In Spring of 2006, Sagar and AmTrans informed Z-Medica of alleged medical device registration requirements in India by the Drugs Controller General, India ("DCGI"). Z-Medica expended substantial time and effort to provide Sagar and AmTrans with the copious requested documents in order to register QuikClot® with DCGI.

85.     In or around July 2007, Z-Medica learned from an outside source that Z-Medica may not have needed to go through the DCGI registration process.

86.     Upon information and belief, Mr. Jain has barged into administrative offices of the DCGI and threatened Indian officials, claiming to act on behalf of Z-Medica.

87.     Upon information and belief, as a result of Mr. Jain's erratic actions, the DCGI has refused to pass QuikClot® through the registration process.

88.     As a result of Mr. Jain's malicious and destructive actions on behalf of Sagar and AmTrans, Z-Medica has not been able to make any sales of QuikClot® in India.

89.     Upon information and belief, Mr. Jain has made untruthful and disparaging statements about Z-Medica and QuikClot® to Indian regulatory authorities.

90.     Defendants have thereby hindered Z-Medica's ability to sell QuikClot® in India.

Unauthorized Representation

91.     Z-Medica informed Defendants in 2007 that they are no longer authorized to represent Z-Medica or QuikClot® in India.

92.     Sagar and Mr. Jain claim on its website that they represent Z-Medica and QuikClot® in India.

93.     Z-Medica has never authorized Sagar or AmTrans to represent or market any Z-Medica products outside of India.

94.     Upon information and belief, Defendants have made false representations to parties that Defendants are authorized distributors and/or representatives of Z-Medica and/or QuikClot® in India and beyond, including without limitation Sri Lanka.

95.     Throughout the spring of 2007, Z-Medica informed Defendants to cease any efforts to sell Z-Medica products or represent Z-Medica in territories to which Defendants lacked rights.

96.     For example, on April 25, 2007, Z-Medica gave Defendants notice that both must immediately cease all activities to sell or promote Z-Medica products in Sri Lanka.

97.     Upon information and belief, Defendants have conspired and continue to conspire to sell QuikClot® in Sri Lanka and other unauthorized markets.

98.     The conduct described above constituted material false representations of fact. Upon information and belief, such statements were made by Mr. Jain on behalf of Sagar and by Mr. Roberts on behalf of AmTrans with the intent of inducing reliance thereon by Z-Medica.

99.     Z-Medica relied upon such statements by Mr. Jain on behalf of Sagar to Z-Medica's detriment.  Had Z-Medica known that Mr. Jain's statements were false, Z-Medica would not have, *inter alia*, provided Mr. Jain with QuikClot® product, would have discontinued Mr. Jain and Sagar's access to QuikClot® and would have taken other appropriate steps to prevent Mr. Jain and Sagar from misusing and disparaging the QuikClot® and Z-Medica brand.

100.    As a result of said conduct, Z-Medica has suffered actual damages.

Fraudulent Procurement of QuikClot® Trademarks in India

101.    Upon information and belief, "QUIKCLOT LEBEL", with a swoosh (Indian Registration No. 1326454 to Mr. Mukesh Gupta) and QUIKCLOT (Indian Application No. 1130431 by Mr. Surinder Kumar Gupta) are in use in India for medicinal preparations and pharmaceuticals, respectively.

102.    Z-Medica is the rightful owner of the QuikClot® trademarks, worldwide and in India in particular.

103.    Z-Medica has not authorized Mr. Jain or Sagar or the above mentioned owners to use, file an application for registration or register any of its trademarks.

104.    Upon information and belief, the above stated Indian trademarks have been fraudulently applied for.

105.    Upon information and belief, Mr. Jain and Sagar are associated with the owners of the above mentioned Indian trademarks.

106.    Z-Medica has suffered injury as a result of Sagar and Mr. Jain's fraudulent actions as described above.

### COUNT EIGHT

**Fraud**
*As Against Am Trans and Mr. Roberts*

107.    Z-Medica incorporates by reference paragraphs 1 through 106 above as if fully set forth herein.

108.    As described above, Mr. Roberts and AmTrans agreed to work with Mr. Jain, Sagar, and Z-Medica to promote, market and sell QuikClot® to the Indian military and defense markets.

109.    As described above, Defendants Mr. Roberts and Mr. Jain have made materially false representations to Z-Medica. These include, but are not limited to, representations that Mr. Roberts and Mr. Jain had the capacity to promote, market and sell QuikClot® to the Indian military and defense market.

110.    Mr. Roberts stated on multiple occasions that in conjunction with Mr. Jain, Mr. Roberts and Mr. Jain had sold thousands of units of QuikClot® to Indian purchasers.

111.    Mr. Roberts stated that on behalf of AmTrans he was purchasing 10,000 units of QuikClot® in March/April 2007 for sale to Indian military and defense markets.

112.    Upon information and belief, Mr. Roberts intended never to pay Z-Medica for the product and also intended to sell the product outside of India.

113.    The conduct described in Paragraphs 109 and 111 constituted material false representations of fact. Such statements were made by Mr. Roberts on behalf of AmTrans with the intent of inducing reliance thereon by Z-Medica.

114.     Z-Medica relied upon such statements by Mr. Roberts on behalf of AmTrans to Z-Medica's detriment.  Had Z-Medica known that Mr. Robert's statements were false, Z-Medica would not have, *inter alia*, provided Mr. Roberts with QuikClot® product, would have discontinued Mr. Roberts's and AmTrans's access to QuikClot® and would have taken other appropriate steps to prevent Mr. Roberts and AmTrans from misusing and disparaging Z-Medica's QuikClot® brand.

115.     As a result of said conduct, Z-Medica has suffered actual damages.

## COUNT NINE

### Misrepresentation
*As Against Mr. Jain and Sagar*

116.     Z-Medica incorporates by reference paragraphs 1 through 115 above as if fully set forth herein.

117.     On numerous occasions, Mr. Jain represented to Z-Medica that he had or was on the brink of making major sales of QuikClot® in India, that he had met with military representatives in India regarding sale of QuikClot® and that he was making good faith efforts to sell QuikClot®.

118.     Furthermore, Mr. Jain did not exercise reasonable care in obtaining or communicating information to Z-Medica regarding his alleged efforts to market and sell QuikClot® in India.

119.     Upon information and belief, on numerous occasions, Mr. Jain made at the best false and at the least ill-informed representations about alleged registration requirements before the DCGI.

120.    Mr. Jain represented to Z-Medica that he would be able to sell, market and distribute QuikClot® in the Indian Market because of his experience, training and knowledge of the region.  These misrepresentations were material to Z-Medica's sales strategy for selling QuikClot® in the Indian military and defense market.

121.    Upon information and belief, Mr. Jain's statements were untrue.

122.    Upon information and belief, Mr. Jain knew or should have known that his statements were false.

123.    Upon information and belief, Mr. Jain made the aforementioned misrepresentations with the intent to deceive Z-Medica.

124.    Upon information and belief, Mr. Jain was negligent in making the aforementioned statements.

125.    Upon information and belief, Mr. Jain made the aforementioned statements with the intent to induce Z-Medica to continue to provide him support and to continue to use him as an authorized agent for QuikClot® in India.

126.    Z-Medica relied on the truth of Mr. Jain's representations as a basis for Z-Medica's sales strategy in India and was ignorant to the falsity of Mr. Jain's statements.

127.    Z-Medica has suffered actual pecuniary harm as a result of its reliance on Mr. Jain's misrepresentations.

## COUNT TEN

### Misrepresentation
*As Against AmTrans and Mr. Roberts*

128.    Z-Medica incorporates by reference paragraphs 1 through 127 above as if fully set forth herein.

129.    On numerous occasions, Mr. Roberts represented to Z-Medica that he and Mr. Jain had or were on the brink of making major sales of QuikClot® in India, that Mr. Jain had met with military representatives in India regarding sale of QuikClot® and that Mr. Jain was making good faith efforts to sell QuikClot®.

130.    Furthermore, Mr. Roberts did not exercise reasonable care in obtaining or communicating information to Z-Medica regarding Mr. Jain's or Mr. Robert's alleged efforts to market and sell QuikClot® in India.

131.    On numerous occasions, Mr. Jain made representations about alleged registration requirements before the DCGI.

132.    On numerous occasions, Mr. Roberts made misrepresentations about his intentions to pay for 10,000 units of QuikClot®, which he took from the Z-Medica headquarters in April 2007.

133.    These misrepresentations were material to Z-Medica's sales strategy for selling QuikClot® in the Indian military and defense market.

134.    Based on Mr. Roberts's misrepresentations, Z-Medica expended resources in preparing and providing Mr. Roberts's with a 10,000 unit order of QuikClot®

135.    Upon information and belief, Mr. Roberts's statements were untrue and known to be untrue by Mr. Roberts.

136.    Upon information and belief, Mr. Roberts made the aforementioned misrepresentations with the intent to deceive Z-Medica.

137.    Upon information and belief, Mr. Roberts was negligent in making the aforementioned statements.

138.    Upon information and belief, Mr. Roberts made the aforementioned statements with the intent to induce Z-Medica to continue to provide him support, credit, and QuikClot® product.

139.    Z-Medica relied on the truth of Mr. Roberts's representations as a basis for Z-Medica's sales strategy in India and did not know nor should it have known of the falsity of Mr. Roberts's statements.

140.    Z-Medica has suffered actual pecuniary harm as a result of its reliance on Mr. Jain's misrepresentations.

## COUNT ELEVEN

### Trademark Infringement, 15 U.S.C. § 1114(1)(a)
*As Against Mr. Jain and Sagar*

141.    Z-Medica incorporates by reference paragraphs 1 through 140 above as if fully set forth herein.

142.    Sagar and Mr. Jain have and continue to use in commerce a reproduction, counterfeit, copy or colorable imitation of the QuikClot® registered mark and logo on their website in connection with the sale, offering for sale, distribution and/or advertising of goods or services.

143.    Such use by Sagar and Mr. Jain of the QuikClot® registered mark is likely to cause confusion, or to cause mistake, or to deceive.

144.    Sagar and Mr. Jain's use of the QuikClot® trademark is without Z-Medica's permission, consent or authorization and constitutes trademark infringement.

145.    Upon information and belief, Sagar and Mr. Jain use the QuikClot® trademark with the willful purpose and intent of misleading the trade and public and trading upon Z-

Medica's federally registered trademark QuikClot® and the associated good will and reputation that accompanies said trademark.

146.    On account of Sagar and Nr. Jain's activities, the trade and public is likely to be confused, misled or deceived as to the source, origin, or sponsorship of its products and services, and therefore Z-Medica will suffer irreparable injury, including to Z-Medica's reputation and goodwill, for which Z-Medica has no adequate remedy at law.

147.    On account of Sagar and Mr. Jain's misrepresentations and/or mischaracterizations and their unauthorized use of the QuikClot® trademark, Z-Medica has suffered actual damages.

## COUNT TWELVE

### Trademark Infringement, 15 U.S.C. § 1114(1)(b)
*As Against Mr. Jain and Sagar*

148.    Z-Medica incorporates by reference paragraphs 1 through 147 above as if fully set forth herein.

149.    Mr. Jain and Sagar have reproduced and/or copied the QuikClot® trademark without the permission, consent or authorization of Z-Medica.

150.    Sagar and Mr. Jain continue to use the QuikClot® trademark on their website. By doing so, Sagar and Mr. Jain have applied a copy of the trademark to advertisements intended to be used in commerce and/or in connection with the sale, distribution, or advertising of its commercial services.

151.    Sagar and Mr. Jain display the QuikClot® trademark on multiple pages of their website.  Sagar and Mr. Jain also claim on their website that Sagar "handles the entire Indian business scene for Z-Medica, USA for their latest and most innovative invention of the century 'QuikClot' . . ."

152.    Upon information and belief, Sagar and Mr. Jain have used and continue to use the QuikClot® trademark with the willful purpose and intent of misleading the trade and public and trading upon Z-Medica's QuikClot® federally registered trademark and the associated good will and reputation.

153.    On account of Sagar's activities, the trade and pubic is likely to be confused, misled or deceived as to the source, origin, or sponsorship of its products and services, and therefore Z-Medica has suffered and will continue to suffer irreparable injury, including injury to Z-Medica and QuikClot®'s good will, for which Z-Medica has no adequate remedy at law.

154.    On account of Sagar's misrepresentations and/or mischaracterizations regarding its authority to sell QuikClot® and its unauthorized use of the QuikClot® trademark, Z-Medica has suffered actual damages.

## COUNT THIRTEEN

### Unfair Competition
*As Against Mr. Jain, Sagar, Mr. Roberts and AmTrans*

155.    Z-Medica incorporates by reference paragraphs 1 through 154 above as if fully set forth herein.

156.    Sagar and Mr. Jain's use on their website of the QuikClot® trademark along with their claims that Sagar "handles the entire Indian business scene for Z-Medica, USA for their latest and most innovative invention of the century 'QuikClot' . . ." constitute false or misleading descriptions of fact and/or representations of fact regarding the nature, characteristics or quality of Sagar and Mr. Jain's services or commercial activities because it creates a false impression and/or misrepresents Sagar and Mr. Jain's authority to represent and their relationship with Z-Medica and its QuikClot® products.

157.    Sagar and Mr. Jain use these false or misleading representations in commerce and/or in connection with the sale, distribution, or advertising of Sagar and Mr. Jain's commercial services, which upon information and belief, include representation, marketing and reselling of technology and medical products in India and beyond.

158.    These false or misleading representations were made in the context of commercial advertising via Sagar and Mr. Jain's internet website, and upon information and belief, in other marketing and promotional materials.

159.    Sagar and Mr. Jain have represented that they sells Z-Medica and QuikClot® products in the Indian subcontinent. Sagar and Mr. Jain's false and or misleading representations have or are likely to damage the public's perception of the quality and safety of the products manufactured by Z-Medica.

160.    Upon information and belief, Sagar and Mr. Jain have used the Z-Medica and QuikClot® trademarks with knowledge that such use is misleading and deceptive and with the intent to unfairly compete with Z-Medica.

161.    On account of Sagar and Mr. Jain's misrepresentations and/or mischaracterizations regarding, *inter alia,* their authority to represent Z-Medica and sell QuikClot® products, Z-Medica has suffered actual damage in the form of the reduction of sales in India and beyond.

162.    Sagar and Mr. Jain hold themselves out on Sagar's website as authorized and exclusive dealers and representatives of Z-Medica and QuikClot® products.

163.    Sagar and Mr. Jain's false and misleading representations deceive customers into thinking that Sagar and Mr. Jain are authorized agents of, or directly connected with Z-Medica.

164.    By failing to inform potential customers that Sagar and Mr. Jain are not connected with Z-Medica and/or QuikClot® products, Sagar and Mr. Jain imply that they are associated with Z-Medica in violation of 15 U.S.C. § 1125(a)(1)(b).

165.    These false or misleading representations were and are used in commerce and/or in connection with the sale, distribution, or advertising of Sagar and Mr. Jain's commercial services, which include the representation, promotion, and sale of technology and products in India and beyond.

166.    As a competitor in the sale of technology and products in India and beyond, Sagar and Mr. Jain's false or misleading representations that imply that they are associated with Z-Medica and/or QuikClot® products have or are likely to damage Z-Medica by reducing Z-Medica's sale of QuikClot® products and/or by degrading the trade's or public's perception of QuikClot® and other products manufactured by Z-Medica.

## COUNT FOURTEEN

### Conversion
*As Against Mr. Roberts*

167.    Z-Medica incorporates by reference paragraphs 1 through 166 above as if fully set forth herein.

168.    On or around April 10, 2007, defendant James Roberts converted to his own use property owned by Z-Medica.  The property converted consists of 10,000 units of QuikClot® brand hemostatic agent.

169.    The property is worth approximately $105,000.00.

170.    Despite Z-Medica's request for compensation or return of the products, Mr. Roberts continues to deprive Z-Medica of the products.  Mr. Roberts has deprived Z-Medica of its property without authority to do so.

24

## COUNT FIFTEEN

### Conversion
*As Against AmTrans*

171.     Z-Medica incorporates by reference paragraphs 1 through 170 above as if fully set forth herein.

172.     On or around April 10, 2007, defendant AmTrans converted to its own use property owned by Z-Medica.  The property converted consists of 10,000 units of QuikClot® brand hemostatic agent.

173.     The property is worth approximately $105,000.00.

174.     Despite Z-Medica's request for compensation or return of the products, AmTrans continues to deprive Z-Medica of the products.  AmTrans has deprived Z-Medica of its property without authority to do so.

## COUNT SIXTEEN

### Conspiracy
*As Against Mr. Jain, Sagar, Mr. Roberts, and AmTrans*

175.     Z-Medica incorporates by reference paragraphs 1 through 174 above as if fully set forth herein.

176.     Upon information and belief, Sagar, AmTrans, Mr. Jain and Mr. Roberts formed an agreement to commit the acts alleged herein.

177.     Upon information and belief, Sagar, AmTrans, Mr. Jain and Mr. Roberts took one or more substantial steps in furtherance of said agreement.

178.     As a result of said conduct, Z-Medica has suffered actual damages.

**WHEREFORE,** Z-Medica respectfully requests:

1.      To be awarded a money damage judgment against Defendants, jointly and severally;

2.      To be awarded multiple damages, all appropriate costs, attorneys' fees, expenses and pre- and post-judgment interest authorized by law on the judgments which enter on his behalf.

3.      Compensatory damages in an amount to be determined.

4.      Treble damages as provided for in Conn. Gen. Stat. § 52-570b(c) and elsewhere in the law;

5.      Punitive damages as provided for in Conn. Gen. Stat. §§ 35-53(b), 42-110g(a) and elsewhere in the law;

6.      Costs incurred in this matter, including attorneys' fees, as provided for in Conn. Gen. Stat. §§ 35-53(b), 42-110g(d), 52-570b(e) and elsewhere in the law; and

7.      A Court order:

    a. Preliminary and permanently enjoining and restraining all Defendants, their officers, directors, principals, agents, servants, employees, successors and assigns and all those acting in concert or participation with them from:

        i.  imitating, copying or making unauthorized use of any simulation, reproduction, copy or colorable imitation of the QuikClot® trademark;

        ii. distributing, circulating, selling, offering for sale, advertising, promoting, activating, using or displaying on Sagar and Mr. Jain's website and/or marketing or promotional materials any simulation, reproduction, copy or colorable imitation of the QuikClot® trademark;

    iii.   making any statement or representation whatsoever, or using any false or misleading descriptions or representations of fact in connection with the manufacture, production, description, circulation, sale, offering for sale, advertising, promotion, use or display on Sagar and Mr. Jain's website and/or marketing or promotional materials of any simulation, reproduction, copy or colorable imitation of the QuikClot® trademark.

    iv.   engaging in any activity constituting unfair competition.

b.   Directing Defendants to deliver to Z-Medica's attorneys or representatives all products, labels, signs, prints, packages, molds, wrappers, advertisements in Defendants' possession or under Defendants' control bearing any simulation, reproduction, copy or colorable imitation of the QuikClot® trademark.

c.   Directing that Defendants file with the Court and serve on Z-Medica's counsel a report in writing and under oath setting forth in detail the manner in which Defendants have complied with any temporary restraining order, or preliminary or permanent injunction entered herein within thirty (30) days of receipt of service of any such order or injunction.

8.    Maximum statutory damages pursuant to 15 U.S.C. § 1117(d), including awarding Z-Medica their damages caused by Defendants' circulation, sale, offering for sale, advertising, promotion, use or display of any simulation, reproduction, copy or colorable imitation of the QuikClot® trademark and or Z-Medica name, and that such award be trebled pursuant to 15 U.S.C. § 1117(b).

9.    An assessment of costs, interest and attorneys fees incurred by Z-Medica in the instant action pursuant to, *inter alia*, 15 U.S.C. § 1117(a).

10.     Such other relief as is available and appropriate in law and equity.

## XI. JURY DEMAND

Plaintiff Z-Medica Corporation hereby demands, in accordance with Federal Rule of

Civil Procedure 38, a trial by jury of all issues so triable in the Complaint.

DATED this 2nd day of May 2008.

PLAINTIFF,
Z-Medica Corporation

By _____
Craig A. Raabe (Juris No. 04116)
Nuala E. Droney (Juris No. 27192)
Shawna Harrison Kohl (Juris No. 27482)
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597
Tel. No.: (860) 275-8200
Fax No.: (860) 275-8299
E-mail: *craabe@rc.com;*
*ndroney@rc.com; skohl@rc.com*